## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| VICKIE LYNCH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-2229-L |
| | § | |
| THE JET CENTER OF DALLAS, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Full or Partial Summary Judgment, filed August 29, 2006. Defendant has not responded to the motion. After careful consideration of the motion, summary judgment evidence, and applicable law, for the reasons stated herein, the court **grants** Plaintiff's Motion for Full Summary Judgment.

### I.      Factual and Procedural Background

This is a suit to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Plaintiff Vickie Lynch ("Lynch") filed suit against her former employer, The Jet Center of Dallas, LLC ("Jet Center"), on November 14, 2005. Lynch seeks a summary judgment that Jet Center is liable to her for overtime because she was not exempt from the overtime provisions of the FLSA as an administrative employee. Lynch asserts that she is entitled to actual damages in the amount of $13,467 and liquidated damages in the amount of $13,467.

According to the uncontroverted summary judgment evidence,[*] Lynch worked for Jet Center from June 8, 2004 to June 4, 2005. Jet Center operates Executive Airport under lease from the city of Dallas. Greg Jordan ("Jordan") supervised Lynch during her employment with Jet Center.

Lynch's primary duty was maintaining and reconciling accounts receivable and accounts payable. For the accounts receivable, Lynch exported invoice information from the FBO Manager software program into the QuickBooks software program. She would then confirm the accuracy of the invoice and payment documentation, apply prepaid amounts to unpaid invoices (including verifying only whether credit card payments were approved), and generate bills for the few invoices which were not paid. Lynch did not set up these accounts or make any judgments about whether or how to account for items. She simply input the numbers into the spreadsheets and reconciled the spreadsheets with other documentation. When she began working at Jet Center, there were fourteen months of bank statements which needed to be reconciled.

Lynch ensured that there were sufficient funds available to pay electronic drafts for fuel. If there were insufficient funds, Lynch notified Jordan, who addressed the matter. Lynch also input data for the payroll. Lynch entered the number of hours claimed by employees into an electronic spreadsheet. The totals for payroll were then automatically calculated by the formulas entered into the spreadsheet by Jordan. Lynch did not review the claimed hours for accuracy, did not prepare the formula in the spreadsheet, and did not do any calculations. She merely input data into the spreadsheet. Lynch also obtained mail from the airport tower and distributed it to the individuals to whom the mail was addressed.

---

[*] The court applies the summary judgment standard set forth in the following section in ruling on this motion.

**Memorandum Opinion and Order - Page 2**

For the accounts payable, Lynch processed invoices for payment. This processing involved entering the invoices into the QuickBooks software. After Lynch entered the invoices, Jordan would indicate which bills he wanted paid that week. Lynch would print the designated checks and Jordan would sign them. Lynch had no authority to determine which invoices would be paid or any authority to sign checks.

Lynch processed receipts from customers who bought fuel, rented hanger space, and rented offices. This usually involved processing credit card payments, but Lynch also received and deposited some checks as well. Lynch also reconciled the report from the credit card company with the customers' payments.

Lynch's responsibilities for the group health, dental and vision insurance involved ascertaining when the employees passed the 90-day waiting period and then ensuring that the forms were completed and submitted to the insurance company. Lynch did other miscellaneous projects, such as obtaining factual information, for the liability insurance company so it could formulate a quote. She verified that pilots and aircraft records were current and that various insurance policies, such as automobile and workers' compensation, were current. Lynch also ordered office supplies.

Jet Center paid Lynch a semi-monthly salary. Her initial semi-monthly salary beginning June 8, 2004 was $1,250. Beginning September 8, 2004, Jet Center increased Lynch's semi-monthly salary to $1,312.50.

When Lynch was hired, Jordan told her that Jet Center was open from 7:00 a.m. to 10:00 p.m. and told her to pick her hours. He said that she was expected to do whatever it took to get the job done. There are no time records for Lynch, and she was not required to keep time records.

Lynch has testified that she worked an estimated 15 hours a week in excess of 40 hours a week. In her motion for summary judgment, Lynch seeks overtime compensation under the FLSA.

## II.      Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent

summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id*.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

In this case, Jet Center filed no response to the summary judgment motion.  This failure, of course, does not permit the court to enter a "default" summary judgment.  *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).  The court, however, is permitted to accept the movant's evidence as undisputed.  *Id*.  Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).  In this case, Jet Center's pleadings are not verified, and it has presented no evidence to counter the summary judgment evidence.

## III.    Discussion

There are two primary issues raised by Lynch's motion.  The first is whether or not she falls under the administrative exemption of the FLSA, which determines if she was eligible for overtime compensation.  The second issue is, if Lynch was eligible for overtime compensation but Jet Center did not pay her for it, what is the measure of her damages?

### A.      The FLSA And Its Administrative Exemption

The FLSA requires an employer to pay overtime compensation to an employee who works more than forty hours in a regular workweek.  29 U.S.C. § 207(a)(1).  This overtime requirement, however, does not apply to employees who fall within one of the exemptions set forth in the Act. An employee employed in a bona fide administrative capacity is exempt.  29 U.S.C. § 213(a)(1). Exemptions from the FLSA must be narrowly construed, and the burden of proof lies with the employer. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006).  Although the decision whether an employee is exempt from the FLSA's overtime compensation requirements is primarily a question of fact, the ultimate decision is a question of law.  *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330-31 (5th Cir. 2000).

The Department of Labor revised the relevant regulations effective August 23, 2004.  Thus, the previous regulations apply to approximately the first three months of Lynch's employment with Jet Center, and the revised regulations apply to the remainder of her employment.  Prior to August 23, 2004, the regulations included a "short test" and a "long test" based on the employee's salary to determine whether the employee was an administrator.  *Cheatham v. Allstate Ins. Co.*, 465 F.3d at 584 n.6.

Under the previous regulations, an employee making more than $250 per week was considered an administrator under the "short test" if her primary duty involved the exercise of

discretion and independent judgment, and consisted of either the performance of office or non-manual work directly related to management policies or the general business operation of her employer or the employer's customers, or the performance of administrative functions in an educational setting in work directly related to the academic instruction or training carried on there. 29 C.F.R. § 541.2(e).

The revised regulations have a single test to determine whether an employee is exempt as an administrator.  Under the revised regulations, an employee making at least $455 per week is considered an administrator if her "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and her "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).

The key component of administrative status under both the former and the revised regulations is the exercise of discretion and independent judgment:

> To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance.  In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.  The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a).  The exercise of discretion and independent judgment "must be more than the use of skill in applying well-established techniques, procedures, or specific standards," and "does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work."  29 C.F.R. § 541.202(e).

In its Answer, Jet Center asserted that Lynch was employed in an administrative position as defined in the FLSA, and was exempt from its overtime requirements.  Answer at 2.  Jet Center has not responded to Lynch's motion, and not submitted any evidence whatsoever to substantiate its assertion that Lynch was an administrative employee.  Jet Center has failed to meet its burden of proof that Lynch was an exempt employee under the FLSA.  *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1041-42 (5th Cir. 1999) (determination that employees were not exempt from the FLSA under the administrative employee exception affirmed; employers failed to point to any specific aspects of the employees' job descriptions that required independent judgment, or specific instances in which the employees exercised discretion or independent judgment).

The uncontroverted summary judgment evidence establishes that Lynch did not meet the standards for an administrative employee set forth in the applicable regulations.  Lynch exported accounts receivable and accounts payable data from one software program into another and reconciled the spreadsheets.  She did not set up the accounts or make any judgments about whether or how to account for items.  Lynch entered invoices into the accounting software, but had no authority to determine which invoices would be paid or to sign checks.  She merely input the payroll data into a spreadsheet, and did not review the data for accuracy, prepare the formulas, or calculate the figures.  She verified that business records and insurance policies were current, distributed mail, and ordered office supplies.  In summary, Lynch's primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance under the applicable standards.

The court notes that in *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326 (5th Cir. 2000), an office manager who performed a few of the same duties as Lynch qualified for the

administrative exemption from the FLSA's overtime requirements.  In that case, like Lynch, office manager Lott updated employee information relative to processing payrolls and reconciled bank statements.  *Lott* at 331-32.  Unlike Lynch, however, Lott exercised discretion in supervising four other employees, and had the authority to reprimand them, evaluate their job performance, and make recommendations as to hiring or firing employees, promoting them, and increasing their salaries.  *Id*.  Lott (who was a certified public accountant) also prepared state tax returns, state withholding returns, and worker's compensation returns, state and federal quarterly tax estimates, and monthly 401k reports.  *Id*.  In this case, Lynch supervised no one and her primary job responsibilities required a substantial amount of time devoted to simple data entry.  The court concludes that Lynch's work did not require the exercise of discretion and independent judgment sufficient to qualify under the administrative exception from the FLSA's overtime compensation requirements.

### B.    Lynch's Damages

The FLSA specifies that overtime compensation is to be paid at a rate not less than one and one-half times the employee's regular rate of pay.  29 U.S.C. § 207(a).  An employer who violates the FLSA is liable to the employee in the amount of her unpaid overtime compensation.  29 U.S.C. § 216(b).  Employers subject to the FLSA are required to make and keep records of their employees' wages and hours.  29 U.S.C. § 211(c).  In its answer to interrogatories, Jet Center stated that there are no time records for Lynch because she was a salaried employee.  The evidence of Lynch's overtime hours consists of her uncontroverted affidavit testimony.

Under the FLSA, "an employee who brings suit for unpaid overtime compensation bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated."  *Reeves v. International Telephone & Telegraph Co.*, 616 F.2d 1342, 1351

(5th Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981), *implicit overruling on other grounds recognized in Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 n.4 (5th Cir. 1999).   Where an employer keeps incomplete or accurate records, however, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."   *In re Williams*, 298 F.3d 458, 463 (5th Cir. 2002) (*citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)).   The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.   *Anderson*, 328 U.S. at 687-88.   "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."   *Id*. at 688.

### 1.        Compensatory Damages

Lynch began working for Jet Center on June 8, 2004 at a semi-monthly salary of $1,250. Beginning September 8, 2004, Jet Center increased Lynch's salary to $1,312.50 semi-monthly. Where an employee's salary covers a period longer than a workweek, for FLSA purposes it must be reduced to a workweek equivalent.  29 C.F.R. § 778.113.   A semi-monthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52, then dividing by the number of hours of the employee's regular workweek.  *Id*.

Lynch worked for Jet Center for four days less than 52 weeks.  Lynch testified that she worked an estimated 15 hours a week in excess of 40 hours a week.  Allowing 12 weeks in which she could have been sick or in which there were holidays, Lynch states that she worked 55 hours a

week for 40 weeks; 10 of those weeks at the lower rate of pay and 30 of those weeks at the higher rate of pay.

Lynch's initial semi-monthly salary of $1,250 multiplied by 24 then divided by 52 equals a weekly rate of $576.92.  That sum divided by 40 equals an hourly rate of $14.42.  One and one-half times $14.42 equals an overtime rate of $21.63 per hour.

Lynch's subsequent semi-monthly salary of $1,312.50 multiplied by 24 then divided by 52 equals a weekly rate of $605.77.  That sum divided by 40 equals an hourly rate of $15.14.  One and one-half times $15.14 equals an overtime rate of $22.716 per hour.

Lynch seeks compensation for 15 overtime hours for 10 weeks at her initial overtime rate of $21.63 per hour, which equals $3,244.50.  Lynch seeks compensation for 15 overtime hours for 30 weeks at her subsequent overtime rate of $22.716 per hour, which equals $10,222.50.  These amounts total $13,467.

Based on the evidence presented, which Jet Center did not attempt to refute, Lynch is entitled to compensatory damages in the amount of $13,467.  The court finds reasonable Lynch's estimate that she worked 40 weeks with overtime in the nearly 52 weeks she worked for Jet Center.  *See Reeves v. International Telephone & Telegraph Co.*, 616 F.2d at 1352 (damages award affirmed; plaintiff had kept in his mind a "running total" of hours worked, estimating an average workweek of 74.5 hours, and the fact finder based his calculation of damages on an average workweek of 60 hours); *Davis v. U-Haul Co. of Miss.*, 2006 WL 1984157 at * 4 (S.D. Miss. July 12, 2006) (summary judgment for employer denied; employees produced inferential testimony as to their overtime hours and employer produced no evidence in rebuttal).

## 2.    Liquidated Damages

Additionally, the FLSA provides for the payment of liquidated damages in an amount equal to the amount of compensatory damages. 29 U.S.C. § 216(b). The court may choose to award a lesser amount of liquidated damages, or none at all, if the employer demonstrates that it acted reasonably and in good faith. 29 U.S.C. § 260; *Lee v. Coahoma County, Miss.*, 937 F.2d 220, 226-27 (5th Cir. 1991). Even if the court determines that the employer's actions were taken in good faith and based on reasonable grounds, however, the court still retains the discretion to award liquidated damages. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999). In addition to these damages, the court shall allow a reasonable attorney's fee to be paid by the employer, and costs of the action. 29 U.S.C. § 216(b).

Jet Center has made no attempt to refute Lynch's claim for liquidated damages, or to demonstrate that it acted reasonably and in good faith. The court determines that Lynch is entitled to liquidated damages in the amount of $13,467, which is equal to the amount awarded as compensatory damages. The court also determines that Lynch is the prevailing party, and is therefore entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## IV.     Conclusion

For the reasons discussed herein, the court concludes that no genuine issue of material fact exists regarding Lynch's FLSA claim, and she is entitled to judgment as a matter of law. Accordingly, the court **grants** Plaintiff's Motion for Full Summary Judgment and **dismisses** this action **with prejudice**.

**It is so ordered** this 26th day of January, 2007.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 12**